**BLANCHARD MACH. CO. v. RECON-
STRUCTION FINANCE CORPORATION
PRICE ADJUSTMENT BOARD.**

No. 9925.

United States Court of Appeals
District of Columbia Circuit.

Argued May 20, 1949.

Decided Oct. 17, 1949.

Mr. Frank B. Wallis and Mr. Allan H.
W. Higgins, Boston, Mass., with whom

Messrs. Goodwin, Proctor & Hoar, and Mr. Spencer M. Beresford, Boston, Mass., were on briefs for petitioner.

Mr. Newell A. Clapp, Attorney, Department of Justice, Washington, D. C., with whom Mr. H. G. Morison, Assistant Attorney General, and Messrs. Paul A. Sweeney, Washington, D.C., Frederick N. Curley, Arlington, Va., and Oscar H. Davis, Attorneys, Department of Justice, were on the brief for respondent.

Before EDGERTON and PROCTOR, Circuit Judges, and H. CHURCH FORD, District Judge sitting by designation.

FORD, District Judge.

Under the Renegotiation Act of April 28, 1942, 56 Stat. 244–247, as amended by the Act of October 21, 1942, 56 Stat. 982–985, and as further amended by the Military Appropriations Act of July 1, 1943, 57 Stat. 347–348, by which "all the provisions" of section 403 of the 1942 Renegotiation Act, as amended, were made applicable to contracts and subcontracts with certain subsidiaries of the Reconstruction Finance Corporation, including the Defense Plant Corporation, 50 U.S.C.A.Appendix, § 1191 et seq., the Price Adjustment Board of the Reconstruction Finance Corporation made an order on February 28, 1945, setting out its findings and determination that $362,098 of the profits realized by petitioner during its fiscal year ending November 30, 1942, under subcontracts with Defense Plant Corporation, upon which final payments had not been made prior to April 28, 1942, were excessive and directed that, subject to appropriate tax credit, the excessive profits so found and determined be eliminated by one or more of the methods provided by section 403 of the Act. The petitioner then filed its petition with the Tax Court of the United States for a redetermination of the questions involved, 50 U.S.C.A.Appendix, § 1191(e) (2). In the ensuing proceedings before the Tax Court, the parties entered into a stipulation which eliminated all issues of fact in respect to the amount of excessive profits realized during the period involved and left for determination by the Tax Court only questions of law raised by petitioner's contentions: (1) that renegotiation of its profits realized from business completed and paid for within its fiscal year ended November 30, 1942, was not commenced within the time allowed by the Renegotiation Act, as amended; (2) that the amendment of section 403 of the Act embodied in the Military Appropriations Act of July 1, 1943, when properly interpreted, does not apply to or subject to renegotiation contracts or subcontracts with R. F.C. subsidiaries which were completed and paid for prior to the enactment of the amendment of 1943, and (3) if the amendment be so interpreted to apply retroactively to the contracts here in question, it is unconstitutional.

The Tax Court decided each of the questions, thus presented, contrary to the contentions of the petitioner, holding that the renegotiation of petitioner's contract was timely commenced, that the amendment of July 1, 1943 applied to and authorized renegotiation of petitioner's subcontracts here in question and as so applied the amendment is not unconstitutional.

The petitioner invokes the jurisdiction of this Court to review the decision of the Tax Court under authority of sections 1141 and 1142 of the Internal Revenue Code, 26 U.S.C.A. §§ 1141, 1142.

Relying upon the so-called Second Renegotiation Act of February 25, 1944, 58 Stat. 86, § 403(e) (1), which provides that, in a proceeding for redetermination before the Tax Court, the determination of "the amount" of excessive profits is final and not reviewable by any court, the respondent challenges the jurisdiction of this Court to review the decision of the Tax Court upon the questions here presented, with special insistence upon lack of our jurisdiction to review the two non-constitutional questions.

Since the provision of the Act relied upon ascribes finality only to the Tax Court's determination of "the amount" of excessive profits (the issue eliminated by stipulation) and "leaves untouched, by direct reference or otherwise, the remaining content of section 1141(a) of the Internal Revenue Code", United States Electrical

Motors v. Jones, 80 U.S.App.D.C. 329, 153 F.2d 134, 136, we think respondent's contention in respect to our lack of jurisdiction to review the questions here presented is untenable.

Section 403 of the Renegotiation Act, as amended by the Act of October 21, 1942, 56 Stat. 984, § 403(c) (6), provides that no renegotiation under the provisions of the Act shall be commenced more than one year after the close of the fiscal year of the contractor or subcontractor within which completion or termination of the contract occurred. In view of this provision, it is undisputed that the renegotiation proceeding here involved was not permissible unless commenced prior to November 30, 1943.

A brief summary of the events which took place prior to November 30, 1943, is as follows: Petitioner was informed by respondent that its business with subsidiaries of the Reconstruction Finance Corporation was subject to renegotiation under the Act as amended and that such proceeding was necessary. To that end petitioner was requested to furnish by November 20, 1943, certain comprehensive data essential to such renegotiation; respondent's representatives had an interview at the office of petitioner with petitioner's assistant manager and informed him that they had been ordered to start the renegotiation proceedings and requested the requisite data, which petitioner's assistant manager declined to furnish. This interview was followed by a letter to petitioner dated November 23, 1943, stating that respondent had received the report of its representatives as to the interview held with petitioner's assistant manager "for the purpose of starting renegotiation of your contracts and subcontracts with R.F.C. subsidiaries", and advising that "as soon as convenient we will continue the assignment covering the renegotiation of your contracts and subcontracts with the R.F.C. subsidiaries."

█ In accord with its ruling upon a similar question in Spray Cotton Mills v. Secretary of War, 1947, 9 T.C. 824, the Tax Court held that the above enumerated steps constituted commencement of renegotiation within the meaning of the Act. We reach the same conclusion.

█ Section 403 of the original Renegotiation Act, as amended on October 21, 1942, 56 Stat. 984, section 403(c) (6), subjected to renegotiation not only contracts and subcontracts thereafter made, but also contracts and subcontracts theretofore made upon which final payment was made after April 28, 1942. The intent of Congress to retain and effectuate the same broad reach of the Act in respect to profits realized under contracts and subcontracts with the subsidiaries of R.F.C. seems quite clear from the provision of the amendment of July 1, 1943, making "all the provisions" of section 403, as amended, applicable to them, without the necessity of resort to its legislative history. The history of the Act, to which the parties have directed our attention, however, satisfactorily confirms this conclusion. We think the Tax Court correctly ruled that the Act applies to the contracts of the petitioner here in question.

█ Petitioner's contention that retroactive application of the amendment of July 1, 1943, so as to permit renegotiation of petitioner's profits realized under contracts completed and upon which final payment had been made prior to the enactment of the amendment, renders it unconstitutional, in that it constitutes the taking of private property for public use in violation of the Fifth Amendment, is likewise without merit.

█ The power of Congress to make provision for the recovery of excessive profits realized under war contracts is included in the broad scope of the war powers expressly granted by the Constitution. The recapture of such excess profits is in the nature of the regulation of maximum prices under war contracts or the collection of excess profit taxes and constitutes neither a taking of private property for public use without just compensation nor deprivation of property without due process of law, in violation of the Fifth Amendment. These questions have been settled by the Supreme Court in Lichter v. United States, 334 U.S. 742, 787, 68 S.Ct. 1294, 92 L.Ed. 1694. The mere fact that, in its applica-

tion to petitioner's contracts here involved, the Renegotiation Act, as amended, is retroactive in its operation does not render it unconstitutional. Considering the same question in Howell Electric Motors Co. v. United States, 172 F.2d 953, 954, the United States Court of Appeals of the Sixth Circuit said: "It is settled law that the retroactive reach of a statute may constitutionally cover property rights that have vested, Louisville & Nashville R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671, and also may cover payments already recieved. Welch v. Henry, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87, 118 A.L.R. 1142; United States v. Hudson, 299 U.S. 498, 57 S.Ct. 309, 81 L.Ed. 370. None of these cases involved the exercise of the war power of Congress; but if, apart from the war emergency, legislation repealing an exemption applicable to income already received was valid, as in the Welch case, clearly Congress has not less power in dealing with the problem of recapturing excess war profits."

We find no error in the rulings of the Tax Court nor in its order here presented for review.

Affirmed.