## RING CONST. CORPORATION v. SECRETARY OF WAR OF UNITED STATES.

### No. 9976.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 4, 1949.

Decided Nov. 7, 1949.

Mr. Josiah E. Brill, Minneapolis, Minn., of the Bar of the Supreme Court of Minnesota, pro hac vice, with whom Mr. Robert A. Littleton, Washington, D. C., was on the brief, for petitioner.

Mr. Charles C. Pearce, Washington, D. C., also entered an appearance for petioner.

Mr. Oscar H. Davis, Attorney, Department of Justice, with whom Messrs. H. G. Morison, Assistant Attorney General, Newell A. Clapp, Paul A. Sweeney, and Harland F. Leathers, Attorneys, Department of Justice, Washington, D. C., were on the brief, for respondent.

Before EDGERTON, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

This case arose under the wartime Renegotiation Act.[1] On December 20, 1943,

---

1. Several congressional enactments are collectively known as the Renegotiation Act. For the purposes of this case we are concerned only with the following: (a) the original Renegotiation Act, which is c. 247, Title IV, § 403 of the Sixth Supplemental National Defense Appropriations Act, 1942, which was an act of April 28, 1942, 56 Stat. 226, 245, 50 U.S.C.A.Appendix § 1191; (b) the amendment thereof by § 801 of the Revenue Act of 1942, 56 Stat. 798, 982; (c) the further amendment thereof by c. 63, Title VII, § 701 of the Revenue Act of 1943, enacted February 25, 1944, 58 Stat. 21, 78.

the Under Secretary of War unilaterally determined that Ring Construction Corporation had realized excessive profits in the sum of $1,365,000 from the performance of contracts for the construction of certain buildings at Camp McCoy, Wisconsin, after which Ring petitioned the Tax Court of the United States for a redetermination. Following a hearing de novo, the Tax Court found excessive profits in the sum of $1,208,965.13. Ring Construction Corporation has petitioned us to review that finding.

The work was done under two contracts with the War Department, the first of which, amounting to $6,836,412.21, was signed by the contractor on March 26, 1942, and approved by the War Department on April 24, 1942, only four days before the enactment of the renegotiation statute. It did not contain a renegotiation clause. The second contract, in the amount of $80,576.-30, was executed on October 3, 1942. Construction was completed and the contract price paid in full before renegotiation, but after the effective date of the Act.

Ring Construction Corporation charges various errors were committed by the Tax Court in its determination of factual questions and in its ruling as to the burden of proof. The petitioner also says the Renegotiation Act was not intended by the Congress to be retroactive; and assails it as unconstitutional if so applied, claiming the Fifth Amendment protects from impairment by renegotiation any contract executed before the Act was adopted.

■ The questions raised by the petitioner, other than the constitutionality of the statute when retroactively applied, are not open to review by this court. Section 403 (e) of the original Act, as amended by § 701 of the Second Renegotiation Act (Revenue Act of 1943, Title VII), provides that upon the filing of a petition for redetermination, the Tax Court " * * * shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency."

With respect to this unequivocal language we said in U.S. Electrical Motors, Inc., v. Jones, 1946, 80 U.S.App.D.C. 329, 331, 153 F.2d 134, 136: " * * * We think * * the statute places exclusive and unreviewable jurisdiction in the Tax Court to determine the amount of excessive profits, including questions of both law and fact in such determination, * * *."

We do not stop, therefore, to state or examine the faults found by the petitioner with the procedure and determination of the Tax Court, but pass on to its argument that the Congress did not intend the Renegotiation Act to apply retroactively and that if so applied the statute is unconstitutional.

The congressional intention to give the legislation both prospective and retrospective effect is expressed in the Act itself. The original statute of April 28, 1942, § 403 (c), provided that the renegotiation authority granted therein to public officials " * * * shall be applicable to all contracts and subcontracts hereafter made and to all contracts and subcontracts heretofore made, whether or not such contracts or subcontracts contain a renegotiation or recapture clause, provided that final payment pursuant to such contract or subcontract has not been made prior to the date of the enactment of this Act."
Similar language appears in the amendment adopted October 21, 1942, § 403 (c) (6), so there is no manner of doubt as to the legislative intent with respect to retroactivity.

In Lichter v. United States, 1948, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694, the Supreme Court held the Renegotiation Act to be constitutional on its face and as applied retroactively to war subcontracts. But the Court noted that it did not have before it in that case a war contract made directly with the government. Petitioner contends, therefore, that the constitutional question raised by it is still open, as its contracts were with the United States itself; that it has rights arising from those contracts which are protected by the Fifth Amendment against the repricing authorized by the Renegotiation Act. In support of this contention the petitioner cites sev-

eral Supreme Court decisions,[2] the general holding of which may be epitomized in the following quotation from the Lynch case, 292 U.S. at page 579, 54 S.Ct. at page 843: "The Fifth Amendment commands that property be not taken without making just compensation. Valid contracts are property, whether the obligor be a private individual, a municipality, a state or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment. United States v. Central Pacific R. Co., 118 U.S. 235, 238 [6 S.Ct. 1038, 30 L.Ed. 173]; United States v. Northern Pacific Ry. Co., 256 U.S. 51, 64, 67 [41 S.Ct. 439, 65 L.Ed. 825]. When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals."

■ To reprice war contracts under legislative authority is not, in our view, to abrogate them, nor to take from the contractor a property right in violation of the due process clause; for we observe that in the course of the Lichter opinion, 334 U.S. at page 787, 68 S.Ct. at page 1317, Mr. Justice Burton said: "The recovery by the Government of excessive profits received or receivable upon war contracts is in the nature of the regulation of maximum prices under war contracts or the collection of excess profits taxes, rather than the requisitioning or condemnation of private property for public use."

But if, in authorizing the determination of excessive profits earned under contracts entered into before its enactment the Renegotiation Act be thought to impair those contracts, it does not follow that the Fifth Amendment is thereby offended. It has been definitely held by the Supreme Court that, with respect to subcontracts, renegotiation is not forbidden by the Fifth Amendment, for in the Lichter case, 334 U.S. 788, 68 S.Ct. 1318, it was said: "* * * The collection of renegotiated excessive profits on a war subcontract also is not in the nature of a penalty and is not a deprivation of a subcontractor of his property without due process of law in violation of the Fifth Amendment."[3]

Consequently, it remains only to determine whether, despite the statement just quoted, a primary contractor, who dealt directly with the government, is deprived of his property without due process of law in violation of the Fifth Amendment when he is required to refund renegotiated excessive profits on a war contract. In other words, a war subcontract entered into before the statute was enacted has been held to be subject to renegotiation if full payment thereunder had not been made when the Act was passed; should a similarly situated direct contract be held exempt from renegotiation?

■ It is ordinarily true, as held in the Lynch and other cases cited by the petitioner, that the United States is so bound by its contracts that it cannot later legislatively

2. United States v. Standard Rice Co., Inc., 1944, 323 U.S. 106, 65 S.Ct. 145, 89 L.Ed. 104; Lynch v. United States, 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; United States v. Northern Pacific Ry. Co., 1921, 256 U.S. 51, 41 S.Ct. 439, 65 L.Ed. 825; United States v. Central Pacific R. Co., 1886, 118 U.S. 235, 6 S.Ct. 1038, 30 L. Ed. 173; Chicago and Northwestern Ry. Co. v. United States, 1881, 14 Otto 680, 104 U.S. 680, 26 L.Ed. 891; Hepburn v. Griswold, 1869, 8 Wall. 603, 75 U.S. 603, 19 L.Ed. 513.

3. Compare Blanchard Machine Co. v. R. F. C. Price Adjustment Board, 177 F.2d 727 (C.A.D.C.1949), where we said: "The power of Congress to make provision for the recovery of excessive profits realized under war contracts is included in the broad scope of the war powers expressly granted by the Constitution. The recapture of such excess profits is in the nature of the regulation of maximum prices under war contracts or the collection of excess profit taxes and constitutes neither a taking of private property for public use without just compensation nor deprivation of property without due process of law, in violation of the Fifth Amendment These questions have been settled by the Supreme Court in Lichter v. United States, 334 U.S. 742, 787, 68 S.Ct. 1294, 92 L.Ed. 1694. The mere fact that, in its application to petitioner's contracts here involved, the Renegotiation Act, as amended, is retroactive in its operation does not render it unconstitutional."

impair or repudiate them. But that is not an inflexible rule, as national crises may justify exceptions. In the Lynch case, 292 U.S. at pages 579-580, 54 S.Ct. at page 844, after holding that rights against the United States arising out of a contract with it are protected by the Fifth Amendment, the Supreme Court said: "The Solicitor General does not suggest, either in brief or argument, that there were supervening conditions which authorized Congress to abrogate these contracts in the exercise of the police or any other power."

This was at least implied recognition that there may be supervening conditions which authorize Congress to abrogate contracts to which the government is a party in the exercise of the police or some other power. We know from the Lichter case that the war power enables Congress to recapture from a subcontractor excessive profits arising from a war contract. We see no greater sanctity in a war contract made directly with the government than in a subcontract, but rather less. For the primary contractor enters into his engagement charged with knowledge of the war power of the Congress to regulate maximum prices thereunder, while a subcontractor, who may not even be aware of the warlike character of his work when he agrees to undertake it, must submit to regulation. Legislation which changes the agreed price in a private contract seems to us to be a much nearer approach to deprivation of property without due process than does congressional regulation of the maximum price in a government contract entered into by a contractor presumed to know of the latent power of the Congress, which indubitably is a duty as well, to exercise every effort in mobilizing the nation to win a war.

Certainly in this situation we have a supervening condition such as that referred to in the Lynch opinion as authorizing Congress to abrogate government contracts in the exercise of one of its broadest and most comprehensive powers, for, when Congress adopted the principle of retroactive renegotiation of war contracts, it did so under the supervening condition of a global conflict.

 We hold the Renegotiation Act is constitutionally applied to war contracts made directly with the United States, if payment in full thereunder had not been made when the Act was passed. Ring's petition to review the Tax Court's judgment is therefore

Dismissed.