**UNITED STATES v. BONNELL et al.**
**BONNELL et al. v. UNITED STATES.**
No. 12306.

United States Court of Appeals
Ninth Circuit.
Feb. 1, 1950.

1.  15 Minn.Law Review, p. 501.

J. Charles Dennis, U. S. Atty., Guy A. B. Dovell, Asst. U. S. Atty., Tacoma, Wash., and John Belcher, Asst. U. S. Atty., Seattle, Wash., for the United States.

L. L. Thompson, Henderson, Carnahan & Thompson, Tacoma, Wash., for Bonnell, and others.

Before ORR, and POPE, Circuit Judges, and McCORMICK, District Judge.

ORR, Circuit Judge.

This is an action under the Renegotiation Act of April 28, 1942, 56 Stat. 245, 50 U.S.C.A.Appendix, § 1191, seeking recovery of alleged excessive profits on a war contract as determined by the Reconstruction Finance Corporation Price Adjustment Board, less applicable tax credits and withheld tax refunds, with six percent interest. The contract was made on April 24, 1942. Section 403(c) of the Act as originally enacted, which contained the authority to recover excessive profits provided: "This subsection shall be applicable to all contracts and subcontracts hereafter made and to all contracts and subcontracts heretofore made, whether or not such contracts or subcontracts contain a renegotiation or recapture clause, provided that final payment pursuant to such contract or subcontract has not been made prior to the date of enactment of this Act." The Renegotiation Act will be hereinafter referred to as the Act. The United States will be referred to as the Government, and the defendants below as the contractors.

The contractors moved to dismiss the complaint on the ground that the Act was unconstitutional insofar as it applied retroactively to prime war contracts made before the date of enactment. They also moved to strike that part of the complaint which prayed for interest. Both motions were denied. The contractors then answered alleging that six percent was an excessive rate of interest in view of alleged prevailing interest rates and the Government's alleged failure to prosecute its claim with due diligence. A further tax refund of $307.73, not included in the complaint, was also set up in the answer. The trial court granted the Government's motion for judgment on the pleadings, awarding it judgment for the amount prayed, except that interest was recomputed at three percent and the $307.73 tax refund was deducted from the principal.

On this appeal the contractors attack the constitutionality of the Act as applied to their contract, and also challenge the interest award. The Government appeals from the interest award and the application by the trial court of the sum of $307.73 tax refund to principal instead of to interest.

In Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694, the Supreme Court thoroughly and extensively considered the constitutionality of the Renegotiation Act, including the application of the Act to contracts entered into before April 28, 1942. The Supreme Court held the Act constitutional as to all contentions there presented. However, as the court pointed out, all contracts involved in the case before it were subcontracts, and the court left undecided the validity of the retroactive application of the Act to contracts made directly with the Government, such as we are concerned with in the instant case.

In support of their contention that retroactive application of the Act to prime contracts is unconstitutional, the contractors rely on Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434, and Perry v. United States, 294 U.S. 330, 55 S.Ct. 432, 434, 79 L.Ed. 912, 95 A.L.R. 1335. In the Lynch case the court held unconstitutional the repeal, in the Economy Act, 38 U.S.C.A. § 701 et seq., of all laws pertaining to yearly renewable term war risk insurance. It was held that rights under a contract with the Government are property which the Fifth Amendment protects against taking without just compensation and that Congress was without power to reduce expenditures by repudiating its contractual obligations. In the Perry case the Supreme Court held that Congress had no power to substitute for an obligation to pay in gold on Government securities a promise to pay in currency of a lesser value. The court construed the power of the Government to borrow money "on the cred-

it of the United States," and clearly distinguished between the power of Congress to alter contracts made between private individuals in the exercise of its various powers and the power, or lack of it, to alter the Government's own engagements.

The type of contract and the nature and purposes of the retroactive modification involved in the instant case, distinguish it from the Lynch and Perry cases. As stated in the Lichter case, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694, the war emergency gave Congress sufficient reason, should it see fit to exercise its power, to requisition property for use in the war program, and leave for later determination the compensation to be paid. Congress chose instead to secure war supplies by contract, and because of lack of time for negotiation and the urgency of the times it became impracticable to estimate costs in advance with an exactness which would permit no more than fair profits. Hence, Congress decided to supplement its war contract program by a system for the recovery, through renegotiation, of excessive war profits. The Renegotiation Act assures the contractor of a reasonable compensation for his goods and services. All that is taken from him is that part of the contract price which represents excessive profit. The pressing necessity of the war situation and the fact that Congress refrained from exercising its power summarily to requisition these contractors' property and conscript their services differentiates this war contract from an ordinary peace time contract with the Government. Cf. Spaulding v. Douglas Aircraft Co., 9 Cir., 154 F.2d 419, 423. That Congress chose to purchase rather than requisition property did not deprive it of power to take subsequent action to limit the price paid to a reasonable amount and to prevent the realization of unreasonable profits because of war-time conditions. "The recovery by the Government of excessive profits received or receivable upon war contracts is in the nature of the regulation of maximum prices under war contracts or the collection of excess profits taxes, rather than the requisitioning or condemnation of private property for pub-

lic use." Lichter v. United States, 334 U.S. 742, 787, 68 S.Ct. at page 1317. Viewed as a regulation of prices or a tax, the Act is clearly constitutional in its application to contracts made prior to enactment on which payment had not yet been made. Ring Construction Corp. v. Secretary of War, D.C. Cir., 178 F.2d 714; Blanchard Machine Co. v. Reconstruction Finance Corp., D.C. Cir., 177 F.2d 727, 729–730 and cases there cited.

The contractors contend that no interest should have been allowed the Government. In cases where the Government recovers excessive profits on a contract entered into after the enactment of the Renegotiation Act, it is entitled to interest from a date reasonably soon after the date of renegotiation. Sampson Motors, Inc. v. United States, 9 Cir., 1948, 168 F.2d 878. However, it is contended in such a case the interest arises from the fact that the obligation to refund excessive profits to the Government is contractual in nature the original contract having incorporated the renegotiation provisions of the statute. But, as in the instant case, the statute being non-existent at the time the original contract was executed, the obligation to refund excessive profits must rest solely upon the power of Congress to conduct war and to conserve the Government's financial resources for war purposes.

The absence of statutory provision for interest does not preclude the Government from recovering interest even though the principal obligation be not based on contract. Interest may be allowed to the Government on taxes for example, without statutory authorization. Billings v. United States, 1914, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596. Interest was not allowed the Government in a case where the obligation underlying the recovery was a fine or penalty, Rodgers v. United States, 1947, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3, and on an order to take enemy alien funds into custody. McGrath v. Manufacturers Trust Co., 338 U.S. 241, 70 S.Ct. 4. The reason for the non-allowance in these cases was that interest is a measure of damages for delay in payment. The Government does not suffer monetary damage from delay where the purpose of the imposed obli-

gation is to curb prohibited acts or to keep property out of the hands ·of the enemy. The rule is different where there is delay in payment on an obligation of a revenue-raising nature, from which the Government is depending upon the collection of a carefully estimated sum by a certain date in order to meet anticipated expenditures. In such an event the Government suffers damage which is compensable by interest.

■ The primary purpose of the Renegotiation Act, along with that of controlling inflation, was to preserve for the use of the Government funds which would otherwise be withheld by war contractors. The Renegotiation Act supplemented the excess profits tax in raising the maximum revenue to carry on the war program. The importance attached to prompt payment by Congress is shown by the various means provided in § 403(c) of the Act to speed collection. Sampson Motors, Inc., v. United States, 9 Cir., 1948, 168 F.2d 878.

■ The contractors have moved to dismiss the appeal of the Government from the allowance of 3% interest on the ground that it is not an appealable order. The Government's appeal is based on more than a contention that the trial court did not exercise its discretion properly. It is asserted that the court had no discretion to exercise but was bound to allow 6%. We find no merit in the motion and it is denied.

■ On the merits, however, we agree with the contractors that interest is not automatically allowable, but is to be denied where its recovery would be inequitable. Board of County Comm'rs of Jackson County v. United States, 1939, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313. Not only the allowance or disallowance of interest but also the rate is discretionary with the court, for "in the absence of any controlling statutory regulation the trial court is as competent to determine the amount of interest for delay as any other item of damage." Royal Indemnity Co. v. United States, 1941, 313 U.S. 289, 296, 61 S.Ct. 995, 997, 85 L.Ed. 1361. The Government contends that administrative regulations under the Renegotiation Act providing for 6% interest, plus repeated Congressional amendments and re-enactments of the Act in the face of such regulations, makes the allowance of 6% interest mandatory. This contention is without merit because the regulations are not an administrative interpretation or construction of provisions in the Act. The Act is silent as to the allowance of interest on the recovery of excessive profits. The most that can be said for congressional re-enactment in the face of these regulations is that it indicated congressional approval of the 6% rate as an administrative guide to the courts in the allowance of interest in the absence of more controlling factors. The trial court, in the allowance of interest, based its award of 3% interest on two factors, the delay in bringing suit which the court found to have been at least as much the fault of the Government as of the contractors, and the prevailing rates of interest at which the Government and the contractors could have borrowed money at the time. We think the court had discretion in the amount of interest to be allowed and that the exercise thereof was not abused.

Another reason appears which supports the district court's determination of the rate of interest to be allowed. Subsequent to the oral argument the following conversation took place between the court and Mr. Dovell, attorney for the Government:

"The Court: Mr. Dovell, I am satisfied that interest should be allowed here on the amount of the claim less the amount you conceded that should be deducted, but what I would like to have you talk on is what the rate should be.

"(Whereupon, further argument was made by counsel for plaintiff.)

"The Court: It is your contention that it should be six per cent and no less than that?

"Mr. Dovell: It ought to be six per cent but my contention is that it is within the discretion of the Court."

■ Having conceded in the proceedings below that the rate of interest was discretionary with the district court, the Government should not be heard on appeal to assert the contrary.

The Government complains of the application of $307.73 tax refund to principal instead of to interest in the computation of the amount of the judgment. By such application the amount of the judgment, $14,240.29, was less than it would have been otherwise by the amount of interest the tax refund would have earned at 3% for one year and 56 days, which amounts to a little over ten dollars. The amount is so small we feel we should not be concerned with it.

The judgment of the trial court is affirmed as to the appeal of the Government and also as to the appeal of the contractors.