**EASTERN MACHINERY CO. v. UNDER SECRETARY OF WAR.**

No. 10309.

United States Court of Appeals District of Columbia Circuit.

Argued March 14, 1950.

Decided April 10, 1950.

————◆————

Mr. Elden McFarland, Washington, D. C., with whom Mr. C. Chester Guy, Washington, D. C., was on the brief, for petitioner.

Mr. Melvin Richter, Washington, D. C., Attorney, Department of Justice, of the Bar of the Supreme Court of Massachusetts, pro hac vice, by special leave of Court, with whom Assistant Attorney General, H. G. Morison and Messrs. Newell A. Clapp, Paul A. Sweeney, and John F. Wolf, Attorneys, Department of Justice, Washington, D. C., were on the brief, for respondent.

Before WILBUR K. MILLER, FAHY and BAZELON, Circuit Judges.

FAHY, Circuit Judge.

The Eastern Machinery Company petitions this court for review of a decision of the Tax Court of the United States which redetermined the amount of excessive profits found to be due by the company to the Government. The original determination had been made by the respondent Under Secretary of War. The company is in the business of buying, reconditioning and selling second-hand machine tools. During its fiscal year ending September 30, 1942, its sales totaled $1,674,280.60, of which amount it reported $406,691.65, as renegotiable. This figure included sales to the Defense Plant Corporation which were completed and fully paid between April 28, 1942, the date of the original Renegotiation Act,[1]

---

1. Sec. 403, Sixth Supplemental National Defense Appropriation Act, 1942, 56 Stat. 226, 245–246. 50 U.S.C.A.Appendix, § 1191.

and July 1, 1943, the date of the amendment applying the Renegotiation Act specifically to contracts with the Defense Plant Corporation.[2] The amount of these sales, totaling $117,785, was reported for renegotiation under protest. In accordance with the statute[3] the respondent Under Secretary of War determined unilaterally that the petitioner had received $143,000 excessive profits and directed it to pay the Treasurer of the United States that amount less any applicable tax credits. Thereupon the petitioner filed in the Tax Court for a *de novo* redetermination.[4] In his answer respondent sought to increase the amount to $205,000. The Tax Court, after a hearing, concluded that the petitioner had failed to prove that the excessive profits were less in amount than those determined by respondent. It also rejected the latter's efforts to increase the amount.

Petitioner contends before us as follows: (1) The July 1, 1943 amendment, supra, is not retroactive; (2) if it is retroactive it is unconstitutional; (3) it has been denied the "just compensation" assured by the Fifth Amendment; (4) the Tax Court determination was arbitrary because of the smallness of profits remaining, and (5) the Renegotiation Act is unconstitutional. The questions presented have been fully answered in recent decisions of this court and of the Supreme Court obviating the need for extended discussion.

■ (1), (2) and (5). We held in Blanchard Machine Co. v. R. F. C. Price Adjustment Board, 1949, 85 U.S.App.D.C. 361, 177 F.2d 727, certiorari denied 70 S.Ct. 571, that the July 1, 1943 amendment applied retroactively to contracts upon which final payment was not made until after April 28, 1942, but upon which final payment was made before July 1, 1943. In that case we held also that such retroactive application of the amendment did not violate the Constitution 177 F.2d at 729. The Renegotiation Acts have been held constitutional by the Supreme Court in Lichter v. United States, 1947, 334 U.S. 742, 68

S.Ct. 1294, 92 L.Ed. 16, 94. See, also, Howell Electric Motors Co. v. United States, 6 Cir., 1949, 172 F.2d 953.

■ (3). Eastern's contention that the renegotiation of its contracts was a taking of its property for a public use without the just compensation required by the Fifth Amendment is also governed by the Lichter case. The argument in effect is that just compensation means the market price, United States v. New River Collieries, 1922, 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 10, 14, that the market price in this case is the O. P. A. ceiling price, United States v. Commodities Trading Corp., 70 S.Ct. 547, and that since all of the sales were made at or below the O. P. A. ceiling price, to renegotiate the contract price downward is to deprive petitioner of the market price to which it is entitled under the Fifth Amendment. Were the requirement of repayment of excessive profits a taking by eminent domain there would be much merit in the argument, particularly in view of the Commodities Trading Corp. case, supra. But the capturing by the Government of excessive profits under the renegotiation statutes is not a taking of private property for public use. The fundamental character of renegotiation has been set forth in the following passage from the Lichter case: "The recovery by the Government of excessive profits received or receivable upon war contracts is in the nature of the regulation of maximum prices under war contracts or the collection of excess profits taxes, rather than the requisitioning or condemnation of private property for public use. One of the primary purposes of the renegotiation plan for redetermining the allowable profit on contracts for the production of war goods by private persons was the avoidance of requisitioning or condemnation proceedings leading to governmental ownership and operation of the plants producing war materials. * * * The collection of renegotiated excessive profits on a war subcontract also is not in the nature of a penalty and is not a de-

---

2. 57 Stat. 347, 348. The amendment specifically added certain agencies in § 1191 (a) (1) and (2) of 50 U.S.C.A.Appendix.

3. 50 U.S.C.A.Appendix, § 1191 (d) (4).

4. 50 U.S.C.A.Appendix, § 1191(e) (1).

privation of a subcontractor of his property without due process of law in violation of the Fifth Amendment." 334 U.S. at 787, 68 S.Ct. at 1317, 92 L.Ed. 94.

 (4). Petitioner's remaining objections revolve around the amount of excessive profits determined by the Tax Court. The statutory provisions applicable to the redetermination by the Tax Court are in part as follows: "* * * such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency." 50 U.S.C.A.Appendix, § 1191(e)(1).

We are therefore not at liberty to "examine the faults found by petitioner with the procedure and determination of the Tax Court". Ring Construction Co. v. Secretary of War, 1949, 85 U.S.App.D.C. 386, 178 F.2d 714. See, also, Blanchard Machine Co. v. R. F. C. Price Adjustment Board, supra, and U. S. Electrical Motors v. Jones, 1946, 80 U.S.App.D.C. 329, 153 F.2d 134. Petitioner points out, however, that the finality of the determination of the Tax Court is as to the "amount, if any, of such excessive profits". It contends that the amount fixed in the present case left so small a profit as to make the determination an arbitrary deprivation of property without due process of law. Let it be assumed for present purposes that the provisions giving finality to the determination of the amount by the Tax Court do not preclude this court from deciding that such a determination in a particular case violates the constitutional protection accorded through due process of law, and therefore should be set aside. We are not faced with such a case. Confiscation is not asserted. The complaint is that the profits left were small. This does not invoke our consideration of the question of lack of due process of law by reason of the amount determined. There is no constitutional guarantee of more than a small profit in war work. See Yakus v. United States, 1943, 321 U.S. 414, 431, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 1943, 321 U.S. 503, 519, 64 S.Ct. 641, 88 L.Ed. 892. We believe that this view is also supported by the rationale of the recent decision in United States v. Commodities Trading Corp., supra.

Affirmed.