**UNITED STATES v. RING CONST. CORP.**

Civ. A. No. 2287.

United States District Court
D. Minnesota, Fourth Division.

Feb. 23, 1951.

C. U. Landrum, U. S. Atty., and Howard H. Gelb, Asst. U. S. Atty., both of St. Paul, Minn., for the plaintiff.

Brill & Brill, of Minneapolis, Minn., for the defendant.

NORDBYE, Chief Judge.

This cause came before the Court on plaintiff's motion to dismiss the counterclaim which defendant sets forth in its amended answer.

By this action plaintiff seeks to recover from defendant profits which were found by the Secretary of War to be excessive upon renegotiation of certain contracts entered into between plaintiff and defendant as part of the military building program at the commencement of World War II. Defendant has interposed a counterclaim which plaintiff now asks the Court to dismiss. The following facts are necessary for an understanding of the motion.

Shortly before World War II defendant was low bidder on part of the work for constructing cantonment buildings at Camp McCoy, Wisconsin, and was awarded the contract for that part of the work by the Government at a fixed price of $6,836,412.21. Apparently the Government furnished the specifications for the buildings. On April 28, 1942, after the contract was executed, and a substantial amount of the work was finished, but before final payment had been made by the Government to defendant, Congress enacted the Renegotiation Act, 56 Stat. 226, 245, 50 U.S.C.A.Appendix, § 1191. There-

after, an additional contract in the sum of $80,576.30 was awarded to defendant by the Government and was performed by defendant. Section 403 of the Renegotiation Act provided, "(c) The Secretary * * * is authorized and directed, whenever in his opinion excessive profits have been realized, or are likely to be realized, from any contract with such Department or from any subcontract thereunder, (1) to require the contractor or subcontractor to renegotiate the contract price, * * * (3) in case any amount of the contract price found as a result of such renegotiation to represent excessive profits shall have been paid to the contractor or subcontractor, to recover such amount from such contractor or subcontractor * * * such Secretary may bring actions in the appropriate courts of the United States to recover such amount on behalf of the United States. * * * This subsection shall be applicable to all contracts and subcontracts hereafter made and to all contracts or subcontracts heretofore made, whether or not such contracts or subcontracts contain a renegotiation or recapture clause, provided that final payments pursuant to such contract or subcontract has not been made prior to the date of enactment of this Act." Subsequent amendments of this provision restated these provisions as well as adding others hereinafter noted.

The Secretary of War proceeded to require renegotiation of the above contracts upon authority of this provision and eventually determined that $1,365,000 in excess profits had been paid the defendant and that this amount, less $1,071,155.76, must be refunded to the Government. A net amount of $293,844.24 was demanded from defendant, who immediately filed an appeal to the Tax Court under authority of Section 403(e) of the Renegotiation Act as amended by Section 701 of the Internal Revenue Act of 1943, Title VII. That provision declares, "(e) (1) Any contractor or subcontractor aggrieved by an order of the [Secretary] determining the amount of excessive profits received or accrued by such contractor or subcontractor may, within ninety days (not counting Sunday or a legal holiday in the District of Colum-

bia as the last day) after the mailing of the notice of such an order under subsection (c) (1), file a petition with the Tax Court of the United States for a redetermination thereof." But on or about November 7, 1946—before the appeal could be determined by the Tax Court—the Secretary commenced the instant action pursuant to Section 403(c) of the Renegotiation Act, supra, to recover the net amount of money which he alleged due as excessive profits. The defendant and the Secretary stipulated on or about March 4, 1947, that the action in this Court should be stayed by this Court until the final determination of the Tax Court proceeding. Security was furnished to the Government by defendant. After a hearing, the Tax Court reduced the amount of defendant's excess profits to $1,208,965.63 and held that defendant must return to the Government a net (after tax allowances) of $210,479.31. Defendant appealed that decision to the Court of Appeals for the District of Columbia. But in order to stop the interest from running on the amount which the Tax Court held returnable defendant and plaintiff executed another stipulation on or about July 21, 1948. It provided that defendant would pay the $210,479.31, net, under protest, reserving, nevertheless, whatever rights defendant might have to recover the sum in the future. The sum of $210,479.31 was paid by defendant to the plaintiff and bonds were placed in escrow to protect the Government's claim for interest upon this amount.

The Court of Appeals concluded that the Tax Court's determination was made final by statute, and that the Court of Appeals had jurisdiction to review only the constitutional questions which defendant raised on the appeal. The court held that the Renegotiation Act was constitutional and dismissed the appeal. Ring Construction Company v. Secretary of War of United States, 85 U.S.App.D.C. 386, 178 F.2d 714. The United States Supreme Court refused certiorari, 339 U.S. 943, 70 S.Ct. 796. Plaintiff now is seeking to enforce his remaining rights in the instant action. Defendant has amended its answer in this action to include a counterclaim for the amount paid under the stipulation of July 21, 1948. Defendant also alleges the facts stated in the counterclaim as a defense to plaintiff's claim for interest. The plaintiff moves for dismissal of that counterclaim upon the grounds that (1) this Court's jurisdiction over the counterclaim could exist only under the Tucker Act, 28 U.S.C.A. § 1346, and therefore is limited to $10,000 claims; (2) the determination by the Tax Court concerning defendant's excess profits is a final determination not subject to review here; (3) the issues raised by defendant's counterclaim are res adjudicata as between plaintiff and defendant.

■ This Court's jurisdiction exists by virtue of statutory grant. Section 1345 of 28 U.S.C.A. provides, "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." Section 403(c) of the Renegotiation Act, supra, authorizes the Secretary of War to bring this action in this Court to recover alleged excess profits. Therefore, this Court possesses jurisdiction over the action brought by plaintiff herein. The basic issue is whether jurisdiction over an action brought by the United States or its officers creates jurisdiction over defendant's counterclaim against the Government.

■ It is well settled that without the statutory consent of Congress the United States cannot be sued. United States v. United States Fidelity & Guaranty Co., 1939, 309 U.S. 506, 514, 60 S.Ct. 653, 84 L.Ed. 894; United States v. Shaw, 1939, 309 U.S. 495, 500, 501, 60 S.Ct. 659, 84 L.Ed. 888; State of Kansas v. United States, 204 U.S. 331, 27 S.Ct. 388, 51 L.Ed. 510; United States v. Thompson, 98 U.S. 486, 489, 490, 25 L.Ed. 194. The Tucker Act, 28 U.S.C.A. § 1346, grants this Court jurisdiction over civil actions of designated types against the Government only to the extent of $10,000. No other applicable statutory provision ap-

pears or is cited. Defendant claims that this Court's jurisdiction is not governed by the Tucker Act in this case because (1) the United States has consented to suit by commencing this action, and (2) the required authority for filing the counterclaim exists apart from the Tucker Act. Defendant cites United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313, and United States v. American Surety Co., C.C.Me.1901, 110 F. 913, for the proposition that suit by the United States implies sovereign consent to counterclaim remedies.

■ But that general proposition and the authority of the Thekla decision for that proposition was unequivocally rejected in United States v. Shaw, 1939, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888. There, the defendant contended, upon authority of the Thekla decision, that "when a sovereign voluntarily seeks the aid of the courts for collection of its indebtedness it takes the form of a private suitor and thereby subjects itself to the full jurisdiction of the court." United States v. Shaw, supra, 309 U.S. at pages 501–502, 60 S.Ct. at page 662. That is defendant's contention here. Justice Reed, speaking for a unanimous court in answer to the defendant's contention in the Shaw case, declared, 309 U.S. at page 503, 60 S.Ct. at page 662, "There is little indication in the facts or language of The Thekla to indicate an intention to permit generally unlimited cross-claims. Quotations from The Thekla * * * are used to illustrate problems entirely apart from the one under consideration here." The court rejected the general proposition propounded by defendant there and held that the trial court lacked jurisdiction because the sovereign (plaintiff) had not consented to the counterclaim by a statute enacted by Congress. That holding with respect to the general rule is binding upon this Court.

■ Moreover, it should be emphasized that the decision of the Thekla case is limited to matters in the nature of libel actions. United States v. Davidson, 5 Cir., 139 F.2d 908, 911; United States v. Shaw, supra, 309 U.S. at pages 502, 503, 60 S.

Ct. at page 662. Defendant claims that the instant counterclaim is like the one involved in the Thekla decision and therefore is proper here even if the general rule defendant advocates is not adopted. But this claim is not sound. The instant action by the Secretary is not like a libel action. "Libels and cross-libels for collision are one litigation and give rise to one liability. In equal fault, the entire damage is divided." United States v. Shaw, supra; Bowker v. United States, 186 U.S. 135, 22 S.Ct. 802, 46 L.Ed. 1090. The subject matter of the entire libel and cross-libel action is the collision and arises out of it. The counterclaims in libel suits do not arise out of facts arising subsequent to the litigation's commencement. Here, the counterclaim directly arises from payment by defendant upon the faith of the stipulation which preserved to defendant whatever rights it possessed to recover the money which it would pay to the Government to stop the interest running upon the money claimed by plaintiff herein. To conclude that defendant's counterclaim here, like the cross-libel cases, arises out of the same facts as the plaintiff's, ignores the sequence of events and their relationship to each other here. Until defendant paid the amount claimed by the Secretary, defendant had no cross-claim arising out of the Secretary's determination of alleged excess profits. Defendant's alleged right to recover on the counterclaim arises not from the mere fact of the Secretary's determination but from rights allegedly owned by virtue of the payment by defendant after the Secretary's alleged wrongful determination and upon the faith of a stipulation preserving defendant's undetermined rights to the money paid. The determination of the Secretary, standing alone, gave plaintiff no right to recover anything, for at that point there was nothing which he could seek to recover. The facts before the court in the Thekla case and in the instant case are not sufficiently analogous to permit application of the Thekla decision. The cases noted also prevent application of the general rule for which defendant cites United States v. American Surety Co., supra.

Defendant argues that this Court possesses jurisdiction here regardless of the applicability of the Thekla decision because the Government has consented to this suit expressly, thereby creating the authority to bring this counterclaim. Defendant points out that Section 403(c) of the Renegotiation Act, as amended by Section 801 of the 1942 Revenue Act, provides, "(4) Upon renegotiation pursuant to this section, the Secretary may make such final or other agreements with a contractor or subcontractor for the elimination of excessive profits and for the discharge of any liability for excessive profits under this section, as the Secretary deems desirable. Such agreements * * * may contain such terms and conditions, as the Secretary deems advisable. Any such agreement shall be final and conclusive according to its terms; * * * except upon a showing of fraud or malfeasance or a wilful misrepresentation of a material fact, * * *." Defendant also points out that the stipulation of July 21, 1948, between plaintiff and defendant provided that the money sought by the Secretary should be paid under protest and reserved defendant's rights to recover the payment.

But Section 403(c) (4), by its express provisions only authorizes agreements for the *"elimination"* and "discharge" of excessive profits. It does not, by its terms, authorize agreements which confer jurisdiction upon a court to determine if excess profits exist. Nothing in the statute indicates an intent or an assumption that the Secretary may agree that this Court or some other court may take jurisdiction. Defendant argues that the provision must be construed broadly in favor of suit against the Government. But the unambiguous words of a statute cannot be distorted by construction, and it is well settled that Congress, not a governmental official, is the agency which must confer jurisdiction upon this Court. Congress must be presumed to have enacted the statute in the light of these rules, and to have been cognizant, therefore, that Congress, not the Secretary, is the agency to confer jurisdiction upon this Court.

That Section 403(c) (4) refers to agreements concerning the amount of money to be paid, not to agreements concerning jurisdiction of a court or the contractor's right to recover the money paid, is evident from a reading of the provision and is substantiated by the nature of the provisions near which it is found and to which it is related. That conclusion also is consistent with the terms of the July 21, 1948, stipulation upon which defendant relies. That stipulation does not purport to confer authority upon this Court or any other court to determine the propriety of defendant's payment or the existence of defendant's liability or any other question. Nor does it even purport to confer upon defendant any right to recover the payment. It only provides that the money is paid to plaintiff by defendant "under protest with the reservation of *whatever* right, *if any,* the defendant may in the future have to recover said sum, or any portion thereof, from the United States of America." (Italics supplied.) The provision obviously was intended to preserve whatever rights existed by other authority, not to create them under the stipulation. It does not seek to confer the rights of action which defendant now seeks to exercise affirmatively under this counterclaim. Defendant urges that the stipulation establishes that defendant did not waive any rights to recover the payment made under protest. But before that question is reached in the pyramid of issues, the existence of defendant's right to recover and the jurisdiction of this Court to entertain the counterclaim must be established.

In view of these premises, therefore, Congress did not waive the sovereign immunity to suit either expressly or by delegation to the proper Secretary. If such a waiver was made and is valid, then the Secretary has done nothing to give it effect. Defendant's contention that this Court possesses jurisdiction of defendant's counterclaim for affirmative relief outside of the Tucker Act must be rejected.

But even if this Court did possess jurisdiction to entertain this counterclaim against the Government, the Court would not possess the right to exercise that power in this action. The defendant pleads in its counterclaim that plaintiff is entitled to no interest and that defendant is entitled to recover the money paid defendant because (1) the Renegotiation Act takes defendant's property without just compensation and violates the Fifth Amendment to the Federal Constitution; (2) defendant has not been granted a right to judicial review of the Tax Court decision or the Secretary's determination of excess profits; (3) defendant has not received a fair trial because the Tax Court placed the burden of proof on defendant and, like the Secretary, committed other errors of fact and law; and (4) plaintiff should be estopped from enforcing any right to collect this assessment on the facts of this case. These are the matters as to which the plaintiff contends (1) that the Tax Court's determination is final and cannot be reviewed here, and (2) that the issues raised by defendant already have been determined by proper tribunals so that the issues are res adjudicata between plaintiff and defendant.

The question of res adjudicata here arises principally because of the decision which the Court of Appeals for the District of Columbia rendered herein and upon which the Supreme Court of the United States denied certiorari in Ring Construction Co. v. Secretary of War of United States, supra [178 F.2d 715]. In that decision the Court of Appeals held that the Renegotiation Act made the Tax Court's determination of the amount of excess profits, 8 T.C. 1070, final and unreviewable, and that the Court of Appeals therefore lacked jurisdiction to "examine the faults found by the petitioner with the procedure and determination of the Tax Court." See, also, United States Electrical Motors, Inc., v. Jones, 80 U.S.App.D.C. 329, 153 F.2d 134, 136. The court did hold in the Ring case, however, that it could review the constitutionality of the Renegotiation Act. And the court held that the Act did not violate the Fifth Amendment or deny defendant here the just compensation guaranteed for taking private property for public use. The court also held, upon the authority of Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694, that the property of a contractor was not taken for a public use when the contractor was required to return to the Government excess profits upon renegotiation. The court concluded, "Ring's petition to review the Tax Court's judgment is therefore dismissed."

Plaintiff contends that this decision is res adjudicata of defendant's right to a review of the Tax Court's determination and of the constitutional questions presented. Defendant argues that the Court of Appeals' dismissal of the appeal was not an affirmance of the Tax Court and that the Court of Appeals (which defendant petitioned to act in this renegotiation matter) lacked jurisdiction over renegotiation matters. Defendant concludes from these premises that the Court of Appeals' statements concerning the constitutional issues and the finality of the Tax Court's decision therefore are void and of no effect here. That the matter before the Court of Appeals constituted a judicial case or controversy and was not prevented from being the subject of a judgment by the Court of Appeals merely because the case went up from the Tax Court seems clear. Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 722, 725, 49 S.Ct. 499, 73 L.Ed. 918. The question here is whether the Court of Appeals' determination is not res adjudicata because (1) the court dismissed the appeal and did not in terms affirm the Tax Court, (2) the Court of Appeals lacked jurisdiction over the subject matter.

The principle of res adjudicata necessarily is predicated upon the hypothesis that substance, not form, controls. For otherwise the rule's inherent purpose to end litigation would itself be form rather than substance and the rule would not serve the useful ends at which it is aimed. The decision of the District of Columbia Court of Appeals must be read as a whole and in the light of this concept. The last

sentence of the decision cannot be read in isolation. Read as a whole, the decision makes apparent that the court intended to adjudge that the petitioner therein (defendant here) was bound by the Tax Court's determination. The Court of Appeals held that the Tax Court's determination was not reviewable because it was final and binding upon defendant, and that the constitutional objections raised by defendant were not sound and therefore did not relieve defendant from the Tax Court's binding decision. Because the appeal was dismissed in form does not change the appellate court's substantive intent as to the effect of the Tax Court's determination and the defendant's obligations under it. In view of the court's decision which accompanied the conclusion in the Ring case, the Ring decision was just as much an affirmance in reality as were the decisions by the same court in Eastern Machinery Co. v. Under Secretary of War, 1950, 86 U.S.App.D.C. 331, 182 F.2d 99; and Blanchard Mach. Co. v. Reconstruction Finance Corp. Price Adjustment Board, 1949, 85 U.S.App.D.C. 361, 177 F.2d 727, 729. In those decisions the court was presented with cases essentially similar to the Ring case and reached the same result upon the same reasoning as in the Ring case. In fact, the court specifically relied upon the Ring case in the Eastern Machinery decision. In those cases, however, the Court of Appeals declared that the Tax Court's decision was "affirmed." The decision in the Ring case must be viewed accordingly in determining the applicability of the principle of res adjudicata here.

Defendant's claim that the Court of Appeals for the District of Columbia had no jurisdiction over the renegotiation question and that its decision upon the finality of the Tax Court's determination is void is not helpful to defendant. As defendant's brief indicates, the question of jurisdiction was brought to the appellate court's attention. The court stated the limits which it believed the Renegotiation Act placed upon its jurisdiction. And it cited United States Electrical Motors, Inc. v. Jones, 80 U.S.App.D.C. 329, 153 F.2d 134, 136, in which that same court had held previously that it possessed jurisdiction over renegotiation appeals. That the court possessed jurisdiction to determine if it possessed jurisdiction cannot be disputed. That the court's decision assumes, if it does not clearly decide, that it possesses jurisdiction to do what it did likewise is apparent. That a determination of jurisdiction is res adjudicata and cannot be attacked collaterally even if erroneous is settled by the decisions of the United States Supreme Court. In Stoll v. Gottlieb, 1938, 305 U.S. 165, at page 172, 59 S.Ct. 134, at page 137, 83 L.Ed. 104, Justice Reed, speaking for a unanimous court, said,

"After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res adjudicata is made has not the power to inquire again into that jurisdictional fact. We see no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation. * * *

"Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined."

Dowell v. Applegate, 152 U.S. 327, 340, 14 S.Ct. 611, 38 L.Ed. 463, holds to the same effect with respect to jurisdiction over the subject matter. There, the question was whether a federal question existed so as to give the court jurisdiction over the subject matter. See, also, Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, at pages 525–526, 51 S.Ct. 517, 75 L.Ed. 1244. Consequently, defendant cannot now seek to relitigate the matter which it petitioned the Court of

Appeals to review. The principle of res adjudicata applies to the issues which defendant here seeks to raise by its counterclaim. Defendant seeks to raise jurisdictional and constitutional issues and issues concerning the finality of the Tax Court's determination which either were submitted or could have been submitted when the Court of Appeals had the matter before it. As plaintiff points out, the defendant is barred from raising here both the matter which was raised and that which defendant could have raised in prior litigation over this matter with plaintiff. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195.

■ Defendant's counterclaim also must be dismissed because of the finality which must be accorded the Tax Court's decision in this Court. Section 403(e) (1) of the Renegotiation Act provides that the Tax Court "shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or determined by any court or agency. The court may determine as the amount of excess profits an amount either less than, equal to, or greater than that determined by the [Secretary]. A proceeding before the Tax Court to finally determine the amount, if any, of excessive profits shall not be treated as a proceeding to review the determination of the [Secretary], but shall be treated as a proceeding de novo." From the terms of this provision, it is clear that Congress intended the Tax Court's determination of the amount of excess profits to be binding and conclusive to the fullest extent possible. Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796. The legislative history confirms this intent Congress was confronted with an unusual situation caused by the emergency preparations for a global war and a national crisis. Prompt and accurate determination of fair contract prices was desired by Congress. It looked to the agency which it considered best equipped to formulate a consistent policy and to meet with speed, experience and efficiency

the complicated questions which would arise. Aircraft & Diesel Equipment Corp. v. Hirsch, supra; French v. War Contracts Price Adjustment Board, 9 Cir., 1950, 182 F.2d 560.

■ Broadly construed, Section 403(e) (1) forbids review by this Court of any questions concerning the determinations of the Tax Court. But Congress cannot delegate to an administrative agency the power to venture beyond the limits set by the Constitution. St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 52, 56 S.Ct. 720, 80 L.Ed. 1033; Crowell v. Benson, 285 U.S. 22, 52 S.Ct 285, 76 L.Ed. 598; Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61. This rule applies whether the administrative ruling involved will apply to a corporation or to an individual. Estep v. United States, 327 U.S. 114, 127, 66 S.Ct. 423, 90 L.Ed. 567. A statute governing the finality and reviewability of an administrative determination must, like any other statute, be interpreted so as to be constitutional if possible. See Estep v. United States, supra. Consequently, this Court possesses jurisdiction to protect constitutional rights which may exist herein and to review issues which they may raise. See French v. War Contracts Price Adjustment Board, supra.

■ Defendant contends that the Tax Court's determination should be reviewed here because that determination has denied him just compensation in violation of the Constitution. But the Renegotiation Act is predicated upon Congress' power to set maximum prices and to tax excess profits, not to take private property for a public use. Lichter v. United States, 334 U.S. 742, 787, 68 S.Ct. 1294, 92 L.Ed. 1694. Defendant's arguments therefore are inapplicable. The question of just compensation does not arise. Ring Const. Co. v. Secretary of War of United States, 85 U.S.App.D.C. 386, 178 F.2d 714. Defendant does not contend that the Tax Court's determination constituted confiscation of the defendant's property in violation of due process. Defendant apparently contends only that its profits were too

small. But small profits on war contracts are not violative of due process. Eastern Machinery Co. v. Under Secretary of War, 86 U.S.App.D.C. 331, 182 F.2d 99, at page 101. Neither does the Renegotiation Act itself violate the Constitution as applied to defendant's situation. Ring Const. Co. v. Secretary of War of United States, 85 U.S.App.D.C. 386, 178 F.2d 714; United States v. Bonnell, 9 Cir., 180 F.2d 145; Blanchard Mach Co. v. Reconstruction Finance Corp. Price Adjustment Board, 85 U.S.App.D.C. 361, 177 F.2d 727, 729–730. Although Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694, involved a sub-contract, it cannot be distinguished in principle from the instant case. It holds that the Renegotiation Act was valid even though applied retroactively.

 Defendant contends that no judicial review of the Tax Court's determination has been afforded it and that this Court therefore should undertake to review that determination. But "except when the Constitution requires it, judicial review of administrative action may be granted or withheld as Congress chooses." Estep v. United States, 327 U.S. 114, 120, 66 S.Ct. 423, 426, 90 L.Ed. 567. And in the Renegotiation Act Congress "intended to endow the Tax Court's decisions with a very large degree of finality." Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 769, 67 S.Ct. 1493, 1501, 91 L.Ed. 1796. This finality applies both to questions of law and to questions of fact, and upon these issues the Tax Court's jurisdiction was intended to be exclusive. Macauley v. Waterman S. S. Corp., 327 U.S. 540, 544, 66 S.Ct. 712, 90 L.Ed. 839. Defendant cites numerous decisions and quotations concerning the right to judicial review. But when "Congress has not expressly authorized judicial review, the type of problem involved and the history of the statute in question become highly relevant in determining whether judicial review may be nonetheless supplied." Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 301, 64 S.Ct. 95, 97, 88 L.Ed. 61. Here, the terms and history of the statute and the type of problem involved limit this Court's jurisdiction for reviewing the Tax Court's determination to the constitutional issues involved. Ring Const. Co. v. Secretary of War of United States, supra; see French v. War Contracts Price Adjustment Board, supra.

In Estep v. United States, supra, the Supreme Court was concerned with the Selective Service Act, 50 U.S.C.A.Appendix, § 301 et seq., and the reviewability of the local draft boards' "final" decisions, as that reviewability concerned the constitutional rights of the draftee. The statute granted the draft boards "final" determinative powers. The court held that the word "final", as limited by the constitutional rights of an individual, established that Congress did not chose to give administrative action under the Selective Service Act "the customary scope of judicial review which obtains under other statutes." It meant, the court held, that courts cannot weigh the evidence to determine if the administrative decision is justified. The administrative decision is final even though erroneous. The question of jurisdiction of the administrative agency is reached only if there is no basis in fact for its decision. Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567.

 That conclusion seems applicable here. It enunciates a constitutional requirement against arbitrariness by the agency and lends finality to the agency's decision in accordance with the intent which Congress indicated by the terms of the Act and its legislative history and the entire scheme of the regulation. Defendant does not contend that no evidence supports the Tax Court's determination here. Defendant contends only that under the Tax Court's determination the "amount of profit left to the defendant was less than adequate to compensate defendant * *." Neither do the allegations appear to affect the Tax Court's jurisdictional determinations so as to permit this Court to take jurisdiction to review the jurisdictional facts.

Upon these premises, therefore, the allegations made by defendant in its counterclaim do not permit this Court to sustain it

on review. Ring Const. Co. v. Secretary of War of United States, supra.

Defendant's counterclaim must be dismissed for all purposes. It is so ordered. The question of what amount of interest, if any, which plaintiff may be entitled to collect is not decided on this motion, for that issue is not raised by defendant's counterclaim.

An exception is reserved to the defendant.