OPINION. Aiíundell, Judge: The facts presented raise the narrow question as to whether or not the acts of the taxpayer have been sufficient to give rise to an indebtedness within the ambit of section 23 (b) of the Internal Revenue Code. If so, then the payments made as interest are deductible as such; if not, then they must be considered in fact dividends, hence not deductible. Precedent provides no ready test. The question is factual, and no one factor may be said to be controlling. Commissioner v. Schmoll Fils Associated, Inc., 110 Fed. (2d) 611. “The determining factors are usually listed as the name given to the certificates, the presence or absence of maturity date, the source of the payments, the right to enforce the payment of principal and interest, participation in management, status equal to or inferior to that of regular corporate creditors, and intent of the parties.” John Kelley Co., 1 T. C. 457. Numerous cases are cited by petitioner which bear upon, but do not decide the question. Especially relied upon is Commissioner v. O. P. P. Holding Corporation, 76 Fed. (2d) 11: In that case a corporation, in part payment for the entire capital stock of another corporation, issued debenture bonds maturing in 25 years, unless extended by a two-thirds vote of the holders, bearing interest at 8 percent, with provisions for the subordination of principal and deferment of interest. The deferment was not, however, to relieve the corporation of the ultimate obligation to pay. The securities were held to evidence an indebtedness, and payments made as interest thereon were properly deductible. But these securities lacked the variable rate of interest computed with reference to profits that is a prominent feature of the present notes; and, further, they were not, as here, issued in exchange for stock of the issuing corporation. In John Kelley Co., supra, there was present the exchange feature. There the petitioner, a closely held corporation, issued maturing, 8 percent “income debenture bonds” in exchange for outstanding preferred stock, the excess after exchanges to be sold at face value to the shareholders. The interest was to be paid “out of income,” and there was provision for suit for enforcing payment of principal and interest in case of default. This Court held that the transactions gave rise to a valid indebtedness, and the deduction of interest payments was allowed. Here again there are distinctions. In John Kelley Co., supra, there was a fiat rate of interest, though payable out of income, as contrasted with the variable, profit-determined rate of the Talbot notes; the interest payments were due whenever the net income was sufficient, with provision for suit in case of default in punctual payment, whereas in the instant case the payment of interest might be deferred, though the net income was sufficient, for such time as the directors might see fit; and debentures remaining after the exchange were issued on subscription to the stockholders, whereas this transaction was exclusively an exchange. In Kena, Inc., 44 B. T. A. 217, a substantially similar interest provision was considered, and this Court, holding for the taxpayer, said: “It is not essential that interest be computed at a stated rate, but only that a sum definitely ascertainable shall be paid for the use of borrowed money, pursuant to the agreement of the lender and the borrower.” Nor is the deferability of interest payments at the option of the. corporation fatal, standing alone. Commissioner v. O. P. P. Holding Co., supra. It is the cumulation of these various restrictive features that tends to cast doubt on the real nature of the instant transaction. In this state of affairs reference must be had to the circumstances surrounding the issuance, to determine the intent of the parties. See Commissioner v. Proctor Shop, Inc., 82 Fed. (2d) 792, where it is stated, in the words of the United States Board of Tax Appeals, “In each case it must be determined whether the real transaction was that of an investment in the corporation or a loan to it. * * * The real intention of the parties is to be sought and in order to establish it evidence aliu/nde the contract is admissible.” The factor of tax avoidance loomed large in the minds of the parties, by their own admission, and indeed it appears to have been the only substantial purpose motivating the transaction. It was stated in testimony that there were also the advantages of a reduction in equity control, enabling a concentration of control to effect a stable management and the providing of a form of investment which would be negotiable and more readily salable. As to the first, it is difficult to see how a pro rata reduction of capital stock would facilitate concentrated control, nor did it in fact change the control. Each shareholder retained the precise voice in the management which he had prior to the transaction. He retained the same right to participate in the profits of the business; what he did not receive by way of interest he would take by way of dividends on his remaining stock. As to negotiability, only a very slight fraction of the notes has actually been severed from stockholdings, and this all within the close family circle. It is questionable how much more salable than the original stock the restricted, subordinated, deferable notes would have been. In the light of these facts, it appears that what the parties really intended to create was a security retaining the profit-sharing advantage of stock, leaving intact their voice in the management, but extending a tax advantage to the corporation not possible in stock. This would seem to create no proper indebtedness. This being so, the 2 percent minimum provision of the note will stand upon no better footing than the whole. In view of the foregoing, it is our conclusion that the “registered notes” were more in the nature of a capital investment than a loan to the corporation, and payments made as “interest” are not deductible under section 23 (b) of the Internal Revenue Code. Decision will be entered under Rule 50.