AIRCRAFT SCREW PRODUCTS COMPANY, INC., PETITIONER, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket No. 296–R. Promulgated May 14, 1947.

*A. L. Salkin, Esq.,* and *Benjamin Sack, C. P. A.,* for the petitioner.
*W. T. Becker, Esq.,* and *Ralph G. Cornell, Esq.,* for the respondent.

## OPINION.

Leech, *Judge*: The renegotiation of petitioner's war contracts for the fiscal year 1943 here involved resulted in a determination by the Navy Price Adjustment Board that petitioner's profits for that year from these contracts were excessive to the extent of $85,000, which, when adjustment was made for $7,000 in state taxes, required a refund in the sum of $78,000. This determination was adopted by respondent, the War Contracts Price Adjustment Board, as its determination. Respondent, by amended answer, asks that we find petitioner's profits to be excessive to the extent of $158,078.

The parties are in agreement as to the total amount of the profits realized by petitioner and subject to renegotiation, with the exception of two items which respondent in his amended answer alleges should be so included. The first of these items is $9,840, deducted by petitioner in computing its net profit before taxes. This amount is made up of $8,800 in interest paid on debenture bonds issued by it

and $1,040 representing the amortization of bond discount applicable to the current year. The second such item is $7,849 in royalties received by petitioner.

Respondent contends that the bond interest and discount should be eliminated as a cost and treated as a distribution of profits to stockholders. Our question is limited to that of whether these bonds issued by petitioner evidenced a debt upon which the contested payments were interest. *Cleveland Adolph Mayer Realty Corporation*, 6 T. C. 730.

It is true that under certain circumstances it has been held that, in computing net income for purposes of income tax, amounts paid as interest upon securities issued by a close corporation to its preferred stockholders in exchange for their stock is to be treated as nothing more than a dividend payment. The question of whether such payments constitute interest upon indebtedness or dividends upon an interest in the nature of that of a stockholder is one of fact. *Commissioner* v. *Schmoll Fils Associated, Inc.*, 110 Fed. (2d) 611; *Talbot Mills*, 3 T. C. 95; affd., 146 Fed. (2d) 809; affd., 326 U. S. 521. "The determining factors are usually listed as the name given to the certificates, the presence or absence of maturity date, the source of the payments, the right to enforce the payment of principal and interest, participation in management, status equal to or inferior to that of regular corporate creditors, and intent of the parties." *John Kelley Co.*, 1 T. C. 457; reversed, 146 Fed. (2d) 466; U. S. Supreme Court reversed Circuit Court, 326 U. S. 521.

In the present case the securities issued are denominated bonds and have a fixed maturity date, a fixed rate of interest, and both principal and interest are payable upon maturity out of the assets of the corporation, whether or not there is a surplus. There is no indication of an intention on the part of the petitioner in the issuance of these securities that its obligation was to be anything less than that of a debtor. The distinction between a shareholder and a creditor set out by the court in *Commissioner* v. *O. P. P. Holding Corporation*, 76 Fed. (2d) 11, has often been quoted with approval. The court said:

\* \* \* The final criterion between creditor and shareholder we believe to be the contingency of payment. The shareholder is entitled to nothing, prior to liquidation, except out of earnings. Even on liquidation, at least in New York, arrears of cumulative dividends are confined to earnings. *Michael* v. *Cayey-Caguas Tobacco Co.*, 190 App. Div. 618, 180 N. Y. S. 532. These debenture bondholders were not so limited. The interest could be deferred, but it was not lost, though the company had no earnings; it could be collected, together with the principal, in 1954, from the corpus of the debtor's property, regardless of whether there should be a surplus. See *Warren* v. *King*, 108 U. S. 389, 399, 2 S. Ct. 789, 27 L. Ed. 769. This distinction marks the vital difference between the shareholder and the creditor. The shareholder is an adventurer in the corporate business; he takes the risk, and profits from success. The creditor, in compensation for not sharing the profits, is to be paid independently of the risk of success,

and gets a right to dip into the capital when the payment date arrives. The courts have very frequently been called upon to determine whether the rights of a claimant are those of shareholder or creditor. Each case has turned on its special facts, and to cite them all would not be useful, if it were possible. We think all the decisions which we have examined may be harmonized by adopting the criterion above suggested. The decision of this court in *Re Fechheimer Fishel Co.*, 212 F. 357, is entirely consistent with this view. There interest on the so-called bonds was to be paid only out of earnings, and upon liquidation or dissolution the whole residue of the corporate assets after payment of the debts was to go to the bondholders. * * *

Upon the renegotiation of excessive profits here in controversy, basing the original determination, this deduction of bond interest was approved and allowed. Respondent now urges its disallowance in affirmatively contending that the amount of excessive profits is in excess of the amount originally determined. The burden of proof is, accordingly, upon respondent to establish that this payment was, in fact, not interest, but a distribution of profits. *Nathan Cohen*, 7 T. C. 1002. In support of its contention respondent merely points out that most of the holders of preferred stock accepted, upon liquidation of that stock, these bonds in payment of the amounts due them and that the stock of the corporation was rather closely held. We think that this proof, at least, falls far short of that necessary. See *John Kelley Co., supra; Commissioner* v. *O. P. P. Holding Corporation, supra; Commissioner* v. *Bray Co.*, 126 Fed. (2d) 612. Respondent has failed to carry its burden.

As to the $7,849 in royalties received by petitioner, which respondent asks us to consider as renegotiable income, it may be pointed out that the contract or contracts under which these payments were received were not included in those renegotiated by respondent. By section 701 (e) (1) of the Revenue Act of 1943, our jurisdiction is limited to a "redetermination" of the amount found by the respondent as excessive profits realized by the contractor upon contracts which it *has renegotiated.* Moreover, the issue of the includibility of this item of royalties in renegotiable income was likewise first raised by respondent at the hearing before this Court. Thus, in any event, if the item of "patent royalties received" had any connection with one or more of the contracts renegotiated, the burden was upon respondent to establish that fact. *Nathan Cohen, supra.* No evidence, however, was presented even tending to show such connection, or even to establish that this business was renegotiable in character. We have accordingly found that the net profits of petitioner, before income taxes and subject to renegotiation, are in the sum of $208,078.

Respondent, as a basis for its assertion that petitioner's profits were excessive in the amount of $158,078, or $73,078 more than the sum originally determined, asks us to find that upon the evidence

here the petitioner's efficiency was only average, that its contribution to the war effort was minor, and that its cooperation with its customers was average. We do not think the evidence justifies such finding. The record, we think, supports fully our finding that petitioner was highly efficient, that its contribution to the war effort was substantial, and that it showed a high degree of cooperation with the Government and other contractors in rendering service. We have reached these conclusions upon the degree of existence of these statutory factors solely upon the basis of the evidence presented at the hearing before this Court.

Respondent arrives at its figure of $158,078 which it contends represents excessive profits by using a different method of computing a reasonable profit from that adopted in the renegotiation of petitioner for the fiscal year 1943, here involved, as well as for the prior year. In the renegotiation for both of those years the volume of net sales was taken into consideration and a determination was made as to what would represent a fair return on such volume of sales. Here respondent uses as the basis for computation the net worth of petitioner and seeks to determine what would be a reasonable return upon such amount. The excess, it is contended, represents excessive profits.

It may be that there are situations in which an allowance of a normal return upon the net investment by the contractor would represent a fair and just determination of a reasonable profit upon its war business. We do not think, however, that such basis can be used in the present case. At the beginning of the year in question petitioner had a net worth of $7,750 in common stock and earned surplus of $54,711. It also had $112,000 borrowed capital, for which it had issued bonds in the same amount. Respondent eliminates this borrowed capital and asks that a return be allowed petitioner only upon the investment represented by its common stock and its earned surplus. It is argued that to allow it to retain $60,000 of its net profits before taxes will leave sufficient profits remaining after payment of taxes to represent a fair return on its investment.

This method of computation does not take into consideration the possession by petitioner of assets which, although they are of exceptional value, as indicated by this record, are not reflected in that value on the balance sheet. These are the patents which it owns and controls. Moreover, such method of computation also disregards the specific statutory mandate requiring other facts to be taken into consideration in addition to net worth.

For the year prior to the one here involved petitioner had net sales of $607,833 upon which it realized a net profit, before taxes, of $138,526 or 22.79 per cent. Upon renegotiation it was permitted to retain of

these net profits $108,526, representing 18.78 per cent of its adjusted net sales after renegotiation. Here respondent's method of computation would permit petitioner to retain net operating profits in the current year of only slightly more than 50 per cent of the amount of profits permitted to be retained in the prior year upon renegotiation, although it is established here that petitioner increased its production in the current year 70 per cent by running two and three shifts and operating seven days a week.

Petitioner asks that a reasonable profit be computed upon the volume of its business, i. e., its net sales. It is argued that since 18.78 per cent of adjusted net sales was considered as reasonable in its operation for the prior year, this same percentage should be allowed upon its increased net sales for the year here involved.

We do not agree. It is clear to us that a different situation governing its pricing policy existed in the present year from that confronting the petitioner at the beginning of the prior year. In the present year its manufacturing and engineering problems and difficulties had been in large measure overcome. As a result, we are convinced that there was little risk assumed by petitioner in its pricing for this year. Its product had been accepted and it could be reasonably foreseen that its production would be increased and its return of profit would be larger by reason of such production increase. Cf. *Stein Bros. Manufacturing Co.*, 7 T. C. 863. Even if it could have been reasonably anticipated that labor or other costs would increase, we think it could also have been anticipated that such increased costs would be offset by the gain from reduced unit costs of manufacturing incident to the increased production, so that its percentage of profit on net sales would be maintained and, at least since its prices were not reduced, that it would realize a substantially larger amount in net profits from its operations than in the prior year.

Under these conditions we think that petitioner without risk could have reduced the prices charged for its products and that in maintaining these prices at the same level it has realized profits in excess of what would be reasonable.

The burden is upon respondent to establish that petitioner realized excessive profits in an amount in excess of $85,000, as determined by the Navy Price Adjustment Board, and upon petitioner to establish that it realized no excessive profits or that such profits were in an amount less than that determined by that Board. *Nathan Cohen, supra.*

We conclude upon the record that petitioner and respondent have failed to carry their respective burdens of proof. See *Nathan Cohen, supra.* Accordingly we have found that petitioner's profits for the fiscal year 1943 were excessive in the amount of $85,000.

Reviewed by the Court.

*An order will be issued in accordance herewith.*