OPINION. Arundell, Judge: Petitioner first contends that the Renegotiation Act as applied to it is unconstitutional. It attempts to distinguish Stein Brothers Manufacturing Co., 7 T. C. 863; Ring Construction Corporation, 8 T. C. 1070, on the ground that those cases involved-prime contractors who had contractual relations with the Government. However, what we said in those cases with reference to the constitutionality of the act in general is equally sufficient to sustain the act as applied to the petitioner, a subcontractor. In any event, we have since specifically held the act constitutional as applied to a subcontractor, Grob Brothers, 9 T. C. 495. See also Spaulding v. Douglas Aircraft Co., 154 Fed. (2d) 419; United States v. Lichter, 68 Fed. Supp. 19; affd., 160 Fed. (2d) 329; certiorari granted, 331 U. S. 802; United States v. Pownall, 65 Fed. Supp. 147; affd., 159 Fed. (2d) 73; certiorari granted, 331 U. S. 802; United States v. Alexander Wool Combing Co., 66 Fed. Supp. 389; affirmed per curiam, 160 Fed. (2d) 103; certiorari granted, 331 U. S. 802. We need not, therefore, further belabor this issue. Petitioner next argues that it is not subject to renegotiation because it is neither a contractor nor a subcontractor within the purview of the Eenegotiation Act. It makes the point that it had no contracts involving an amount of more than $100,000 and calls attention to the provision in section 403 (b) of the act requiring the insertion of a provision for renegotiation in each subcontract involving an estimated amount of more than $100,000. A similar argument was made, but without success, in Grob Brothers, supra. As we there pointed out, the statutory definition of a subcontract is extremely broad,[1] and the obvious intent of Congress was to limit profits derived from war production by both contractors and subcontractors. The question whether subcontracts in amounts of less than $100,000 are subject to renegotiation was also raised in the Liohter and Pownall cases, supra, although the decisions turned on other grounds. Section 403 (b) also provides that: * * * Whether or not there is inserted in a contract with a Department or subcontract, to which subsection (c) is applicable, the provisions specified in this subsection, such contract or subcontract, as the case may be, shall be considered as having been made subject to such subsection in the same manner and to the same extent as if such provisions had been inserted. [Italics added.] But subsection (c) rather than (b) is the one dealing with the limitations on the power to renegotiate, and nothing in subsection (c) limits renegotiable subcontracts to those involving amounts of more than $100,000. Under paragraph (1) of that subsection, the Board is given power to renegotiate whenever in its opinion the amounts received or accrued under subcontracts may reflect excessive profits, and the Board “shall exercise its powers with respect to the aggregate of the amounts received or accrued during'the fiscal year * * * by a * * * subcontractor under * * * subcontracts.” Under the terms of paragraph (6), subsection (c) is applicable to all contracts and subcontracts to the extent of amounts received or accrued thereunder in any fiscal year , ending after June 30,1943, regardless of whether they contain the provisions required under subsection (b), unless “the aggregate of the amounts received or accrued in such fiscal year * * * do not exceed $500,000.” Here the aggregate of the amounts received or. accrued was $1,692,243.98, .which clearly exceeds the $500,000 limitation. Moreover, nothing in subsection (a), which defines the terms used in the act, restricts renegotiable subcontracts to those involving, amounts of more than $100,000. We think it quite clear that the provisions of section 403 (b) are not a limitation on tbe definition of subcontract in section 408 (a) (5) (A). Such was the administrative interpretation early adopted by the renegotiating authorities, and we think rightly so. See J-PAB-2 (e), Joint Statement by the War, Navy, and Treasury Departments and the Maritime Commission, March 31, 1943. Nor are the provisions of section 403 (b) a limitation on the Board’s power to renegotiate under section 403 (c). See Spaulding v. Douglas Aircraft Co., supra. We hold that there is no merit in petitioner’s argument on this point, and that the petitioner is subject to renegotiation. On the merits, the question is whether petitioner realized excessive profits on its renegotiable business and, if so, in what amount. The War Contracts Price Adjustment Board determined that petitioner’s profits were excessive to the extent of $60,000, and in the answer respondent has asked for a determination that the excessive profits were at least $75,000. We held in Nathan Cohen, 7 T. C. 1002, that the petitioner has the burden of proof with respect to any amount up to that originally determined as excessive, and respondent has the burden with respect to any additional amount. We find no merit whatever in petitioner’s contention that the determination of the Board was arbitrary, unreasonable, and capricious, but think that the record amply demonstrates the contrary. The evidence shows that the various statutory factors[2] were taken into consideration in determining that petitioner’s profits were excessive to the extent of $60,000. The remaining net profits on renegotiable sales, after deducting those determined to be excessive, allow the petitioner a margin of between 5½ per cent, and 6 per cent on sales — approximately equivalent to its best prewar year, 1939, and in excess of its average prewar experience. And certainly the petitioner is in no position to complain of the return on net worth which the remaining profits give it. In arguing that it had no excessive profits, petitioner relies on certain information and tables relating to renegotiated 1943 cases submitted by the chairman of the War Contracts Price Adjustment Board to the Select Committee on Small Business of the House of Representatives and published in the Congressional Record.[3] We think such information is of very little assistance for comparative purposes. While the average percentage of profits to sales after renegotiation in the cases there considered was larger than in petitioner’s case, the return on net worth after renegotiation was very much less. If any weight is to be given to such statistical information, the net result appears to be that the factors therein favorable to petitioner’s contentions are about equally balanced by the unfavorable factors. It can not be doubted that petitioner’s efficiency was good and that it assumed some risks, particularly in connection witb tlie construction of the building to house the earmarked stock; and its undertaking in connection with the stock-piling contract was undoubtedly a contribution to the war effort. However, we are convinced that the profits remaining to petitioner, after-deduction of the amount determined by the Board to be excessive, give it adequate compensation for those factors. Petitioner’s operations were relatively simple wholesaling. It did no manufacturing, and there is no evidence that it made any inventive or developmental contribution. Its wartime business was of the same general character as its peacetime business, except that the variety of products it could obtain was more limited and the volume of business much greater. Its nonrenegotiable business in 1943 was greater than its average peacetime business. Its inventory turnover was high. Upon a careful consideration of the entire record, we can only conclude that petitioner has not proved it had less than $60,000 excessive profits. On the other hand, we do not think the respondent has justified its claim for an increased amount. We have accordingly found that petitioner had excessive profits of $60,000, or a net amount, after adjustment for state taxes, of $59,562.34. Nathan Cohen, supra; Aircraft Screw Products Co., 8 T. C. 1037; Western Precipitation Corporation, 9 T. C. 877. An order will be issued in accordance herewith. Sec. 403. (a) For the purposes of this section— ******* (5) The term ‘‘subcontract” means— (A) Any purchase order or agreement to perform all or any part of the work, or to make or furnish any article, required for the performance of any other contract or subcontract * * *. * * * ⅜ * • » * Sec. 403 (a) (4) (A), Renegotiation Act. 91 Cong. Rec. 6145-6149.