JOSEPH A. BASS, RAYMOND J. BASS, JOSEPHINE A. BASS, AND ANITA RUTH BASS, COPARTNERS DOING BUSINESS UNDER THE NAME AND STYLE OF JOSEPH A. BASS COMPANY; PAUL STEENBERG CONSTRUCTION COMPANY, A CORPORATION; AND FLEISHER ENGINEERING & CONSTRUCTION CO., A CORPORATION; ALL TOGETHER AS JOINT CONTRACTORS AND COVENTURERS, PETITIONERS, *v.* HENRY L. STIMSON, SECRETARY OF WAR OF THE UNITED STATES, AND ROBERT P. PATTERSON, UNDER SECRETARY OF WAR OF THE UNITED STATES, RESPONDENTS.

Docket Nos. 108–R, 109–R.   Promulgated May 22, 1953.

*Josiah E. Brill, Esq.,* and *Edmund T. Montgomery, Esq.,* for the petitioners.

*John F. Wolf, Esq.,* and *James H. Prentice, Esq.,* for the respondents.

OPINION.

ARUNDELL, *Judge:* On August 30, 1944, the respondent entered unilateral orders determining excessive profits from two separate groups of contracts entered into between the petitioner and the United States of America. Docket No. 108–R relates to the group referred to herein as the Camp McCoy contracts and Docket No. 109–R refers to the group referred to herein as the Camp Breckenridge contracts. In assigning error to both determinations, the petitioner has raised such issues as the validity of the determination, our jurisdiction to make redeterminations, and the constitutionality of the Renegotiation Act of 1942, as amended. Each party contends the other has the burden of proof and neither has offered evidence to establish the extent to which the profits were or were not excessive.

We turn first to the alleged invalidity and the related jurisdictional issue. The parties do not dispute the rule of statutory law that the Secretary of War, the respondent, is without authority to determine excessive profits with respect to a fiscal year, that is, a taxable year of the contractor ending after June 30, 1943. Section 403 (c) (1) of the Renegotiation Act of 1943, which was enacted by the Revenue Act of 1943, vests authority in the then newly created War Contracts Price Adjustment Board to undertake renegotiation proceedings, to enter into final or other agreements with respect to the elimination of excessive profits received or accrued, and, in the absence of an agreement, to issue and enter an order determining the amount of excessive

profits, which order is final and unreviewable in the absence of the filing of a timely petition with this Court. Section 403 (c) (6) of the Renegotiation Act of 1943 provides that section 403 (c) "shall be applicable to all contracts and subcontracts, to the extent of amounts received or accrued thereunder in any fiscal year ending after June 30, 1943."

Section 403 (e) (2) of the Renegotiation Act of 1943, which was enacted also as an amendment to the Renegotiation Act of 1942, provides:

Any contractor or subcontractor * * * aggrieved by a determination of the Secretary made prior to the date of the enactment of the Revenue Act of 1943, with respect to a fiscal year ending before July 1, 1943, as to the existence of excessive profits, which is not embodied in an agreement with the contractor or subcontractor, may * * * file a petition with The Tax Court of the United States for a redetermination thereof, and any such contractor or subcontractor aggrieved by a determination of the Secretary made on or after the date of the enactment of the Revenue Act of 1943, with respect to any such fiscal year, as to the existence of excessive profits, which is not embodied in an agreement with the contractor or subcontractor, may * * * file a petition with The Tax Court of the United States for redetermination thereof.

This provision was made effective from February 25, 1944, the date of the enactment of the Revenue Act of 1943. The term "fiscal year" is defined as "the taxable year of the contractor or subcontractor under Chapter 1 of the Internal Revenue Code."[3] Section 403 (a) (8), Re-negotiation Act of 1943.

The differences between the parties with respect to this particular issue are factual. The respondent contends that the income from the contracts accrued, both under the accrual and the completed contract method of accounting, in a fiscal year ending prior to July 1, 1943. More particularly, he argues that the income from the Camp Brecken-ridge contracts accrued in the petitioner's calendar year 1942 and the income from the Camp McCoy contracts accrued during the petition-er's fiscal period January 1 to April 30, 1943. Petitioner contends that in 1943 the joint venture continued to report its taxable income on the basis of a calendar year and, further, that none of the income from those contracts accrued prior to July 1, 1943.

The parties agree that the petitioner's income was reported by the accrual method of accounting. The petitioner's amended partner-ship return for 1942 shows on its face that it was filed for the calendar year 1942 and that the business of the petitioner was "Performance

---

[3] The term "taxable year" is defined as follows in section 48 (a), Chapter 1, of the Internal Revenue Code:

SEC. 48. DEFINITIONS. When used in this chapter—

(a) TAXABLE YEAR.—"Taxable year" means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under this Part. "Taxable year" means, in the case of a return made for a fractional part of a year under the provisions of this chapter or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made.

of Contracts at Camp Breckenridge, Kentucky, as a joint venture." The parties agree and we have found that the revised contract price on the contracts referred to as the Camp Breckenridge contracts totaled $3,139,021.47. This is the figure shown in the schedule attached to the return. The final payroll on those contracts was dated November 11 and December 30, 1942.

With reference to the return for the subsequent period, the evidence is as follows: The petitioner filed a return which, on page 1, contained the following notation: "Fiscal year beginning Jan. 1, 1943 and ending April 30, 1943." This notation follows the blacked out, printed phrase "For Calendar Year 1942." The petitioner contends that nonetheless this return was filed for the calendar year 1943 and refers to the fact that it was filed March 9, 1944, the approximate time for filing returns for the calendar year 1943. However, this fact is of no support to the petitioner who designated on the face of the return that it was "Delinquent." Also, there is stamped on that page the remarks "Delinquent" and "Affidavit of Delinquency Attached." Although a taxpayer cannot change from one taxable year to another without permission of the Commissioner of Internal Revenue, sections 46 and 47, I. R. C., Regulations 111, section 29.46–1, it is not necessary to make formal application for such permission; it is sufficient that the Commissioner of Internal Revenue accepts and approves a return made for a different accounting period. *Jonas Cadillac Co.*, 16 B. T. A. 932, affd. 41 F. 2d 141; *Clark Brown Grain Co.*, 18 B. T. A. 937. There is no evidence that the Commissioner disapproved of the return or that permission to change was sought and refused.

On the return filed for the period January 1 to April 30, 1943, petitioner states that its business was "Performance of Contracts at Camp McCoy, Wisconsin as a joint venture." In a schedule attached to the return, the sum of $2,493,273.60 was shown as "Income—Contracts." The parties agree and we have found that the revised contract price on the contracts referred to as the Camp McCoy contracts totaled $2,446,856.97. The final payrolls on the contracts were dated no later than April 21, 1943, except for three relatively small contracts, as to which we have no evidence of the date of final payrolls.

The petitioner has made no serious attempt to overcome this evidence indicating that the returns were filed for the calendar year 1942 and for the fiscal period January 1 to April 30, 1943, and that the income from all the contracts in question accrued to the petitioner by April 30, 1943, under both the accrual and the completed contract method of accounting. These cases were submitted under Rule 30. There is no testimony and on this particular factual question there is little evidence. The petitioner has attempted to overcome this failure of proof by arguing that the burden of proof rests on the respondent. However, it is now well established that in a Tax Court proceeding for

the redetermination of excessive profits the petitioner has the burden of proof. *Nathan Cohen v. Secretary of War*, 7 T. C. 1002; *Aircraft Screw Products Co.* v. *War Contracts Price Adjustment Board*, 8 T. C. 1037; see *Ring Construction Corporation* v. *Secretary of War*, 8 T. C. 1070, affd. 178 F. 2d 714, certiorari denied 339 U. S. 943.

Under these circumstances, we have found that the income from all the contracts in question accrued to the petitioner in a fiscal or taxable year ending before July 1, 1943.

Also, in connection with the matter of the ending date of the fiscal year or taxable year, we do not find merit in the petitioner's alternative argument that the determinations were against the individual joint venturers, not against the joint venture, and therefore it is their fiscal or taxable year that is determinative. The contracts were entered into between the United States of America and the Bass, Steenberg, and Fleisher companies acting as joint contractors and coadventurers, referred to as the contractor. The contracts were not entered into with the individuals as such and the determinations were against the joint venture. It is the excessive profits of that entity that are in issue. *Continental Chemical & Engineering Supply Co.* v. *Secretary of War*, 11 T. C. 45.

We, therefore, conclude that the determinations were "with respect to a fiscal year ending before July 1, 1943" and section 403 (e) (2) of the Renegotiation Act of 1942, as amended, did not render invalid either of the respondent's determinations.

Nor were the determinations invalid because the petitioner's several contracts were divided into two groups for purposes of renegotiation. The petitioner contends the respondent was required to treat the contracts individually or as one single group. There is nothing to indicate that this division of the contracts by camps was arbitrary or unreasonable or in any way disadvantageous to the petitioner. Furthermore, section 403 (c) (1) of the Renegotiation Act of 1942, as amended, provides that the Secretary of War "in his discretion, may renegotiate to eliminate excessive profits on some or all of" the contracts and subcontracts of a contractor or subcontractor "without separately renegotiating the contract price of each contract or subcontract." The Renegotiation Act of 1942, as amended, did not mandatorily establish any basis of renegotiation. *Psaty & Fuhrman, Inc.* v. *Stimson*, 11 T. C. 638, 642, appeal dismissed 182 F. 2d 985. We, therefore, conclude that the respondent had authority to make these determinations.

We turn now to the constitutional issue. The petitioner argues that the Renegotiation Act of 1942, as amended, is unconstitutional insofar as applied retroactively to deprive it of the agreed price of contracts which it entered into as contractor directly with the United States Government prior to the passage of the Renegotiation Act of April

28, 1942, as amended by section 701(b) of the Revenue Act of 1943; that the remedy provided in section 403(e)(1) for a *de novo* proceeding before the Tax Court to redetermine excessive profits with unreviewable finality does not meet the requirements of due process of law; that its rights against the United States arising out of contracts with it are protected by the Fifth Amendment; that even if the act is valid under certain circumstances, it is invalid when applied retroactively to a contract between the petitioner and the United States relating to the erection of ordinary cantonment buildings.

All of these constitutional issues have already been decided adversely to the petitioner in *Ring Construction Corporation* v. *Secretary of War, supra,* and according to counsel for the petitioner they are raised again here to preserve the constitutional questions for any possible further proceedings. On authority of *Lichter* v. *United States*, 334 U. S. 742, *Ring Construction Corporation* v. *Secretary of War, supra,* and *Stein Brothers Mfg. Co.* v. *Secretary of War*, 7 T. C. 863, we hold that the act is constitutional on its face and as applied in these proceedings.

Finally, we come to the factual question whether the petitioner's profits were excessive within the purview of the Renegotiation Act of 1942, as amended, and, if so, to what extent. The petitioner has taken the position that the respondent has the burden of proving that the amount of excessive profits determined by the orders in each case are not in error and it has offered no evidence to establish that the respondent's determinations were erroneous. As previously indicated, it is now well established that in a Tax Court proceeding for the redetermination of excessive profits, the petitioner has the burden of proving that the respondent's determination is erroneous. *Nathan Cohen* v. *Secretary of War, supra; Aircraft Screw Products Co.* v. *War Contracts Price Adjustment Board, supra; Ring Construction Corporation* v. *Secretary of War, supra.* Therefore, we sustain the respondent in his determinations of excessive profits in both Docket Nos. 108–R and 109–R.

*Decisions will be entered for the respondents.*