OPINION. Harron, Judge: The only question is whether petitioner was a full-time employee of Ozone during the year 1952. Despondent determined that a contract between petitioner and Ozone is subject to renegotiation, and that petitioner realized excessive profits from the contract during 1952, which must be eliminated under the Penegotiation Act of 1951. The contract between petitioner and Ozone is subject to renegotiation only if it was a “subcontract” as defined in subsection (g) (3)[1] of section 103 of the Eenegotiation Act of 1951. That subsection contains an exception which makes it inapplicable to any contract, one of the parties to which is a “full-time employee” of the other contracting party. Petitioner contends that he was a full-time employee of Ozone and that, therefore, the contract between him and Ozone comes within the exception. Eespondent concedes that petitioner devoted his full time to work for Ozone under the contract, but it contends that, nevertheless, petitioner was not an employee of Ozone, but was an independent contractor. Petitioner raises no question as to the amount of excessive profits determined by respondent, $31,112, and, therefore, if petitioner was not an employee of Ozone during 1952, respondent’s determination must be sustained. The burden is upon petitioner to prove that he was an employee of Ozone during the year 1952. Nathan Cohen v. Secretary of War, 7 T. C. 1002; Aircraft Screw Products Co., 8 T. C. 1037, 1044; Edell v. United States, 28 T. C. 601. In A. P. Dowell, Jr. v. Forrestal, 13 T. C. 845, this Court defined the term employee for the purposes of section 403 (a) (5) (ii) of the Eenegotiation Act of 1942, as amended, which is equivalent to section 103(g) (3) of the Eenegotiation Act of 1951 here involved. We there laid down the rule that an employee is one who is subject to the direction of an employer as to the manner in which he conducts his business, whereas an independent contractor is one who is subject to the control of one who retains his services only as to the result of his work. We said in the Dowell case (pp. 849-850) : The Renegotiation Act is a war measure, unknown to the common law. Its purpose is to prevent those engaged in war contracts from realizing excessive profits, and the terms used therein should, if reasonably possible, be interpreted and construed to give effect to its proposes. Cf. United, States v. Silk, 331 U. S. 704; National Labor Relations Board v. Hearst Publications, Inc., 322 U. S. 111. We think the purposes of the statute will be served if the term “employee” is given its ordinary and usual interpretation as comprising one who meets the test of the generally established concept of legal relationship of employer and employee. Such a relationship exists where the employer retains the right to direct the manner in which the business is to be done, as well as the result to be áeeomplished. Singer Manufacturing Co. v. Rahn, 132 U. S. 518, 523. An “independent contractor” is most frequently defined as one who contracts to do certain work according to his own methods and without being subject to the control of his employer, except as to the product or result of his work. 27 Am. Jur., Independent Contractor, § 2, p. 481. Also, in Irene, L. Bell, 13 T. C. 344, 350, we held that petitioner was not an employee for the purposes of section 22 (n) (1) of the Internal Revenue Code of 1939, because she was not subject to supervision as to the manner in which she worked. It is clear that in their contract dated January 1, 1949, petitioner and Ozone intended that petitioner was to be retained by Ozone as an independent contractor, and not as an employee. See Farm Bureau Cooperative Mill & Sup. v. Blue Star Foods, 137 F. Supp. 486, 492. Petitioner does not argue otherwise. Under that contract, petitioner was “to act as an independent sales representative and broker” of Ozone, and he was to further the business of Ozone “at such times and places as in his discretion may be suitable and advisable * * Ozone retained control only over the result of petitioner’s work, the obtaining of business, and it did not direct the manner in which petitioner was to produce that result. Petitioner argues, however, that the contract dated January 1, 1949, was modified by an oral agreement made at a meeting held in the office of Ozone’s attorney, Gabler, in January 1950, under which he became an employee of Ozone. The record fails to support this argument. Even petitioner’s own testimony as to what took place at the meeting in Gabler’s office does not show that there was any agreement or even discussion concerning a change from petitioner’s status as an independent contractor. On the other hand, the testimony of respondent’s witness, Rose Wiebel, secretary of Ozone, who was present at the meeting, shows clearly that the only oral changes made in the contract were that it was extended to December 31, 1953, and that petitioner was to work exclusively for Ozone. Gabler and Philipp Wiebel, president of Ozone, were also present at the meeting of January 1950 in Gabler’s office, but they were not called to testify. Respondent had no duty to call these two witnesses. Since petitioner had the burden of proof and these two witnesses were equally available to him, it was incumbent on him to call them, if he thought that their testimony would further his case. The fact that the contract between petitioner and Ozone denominated him an “independent sales representative” is not in itself determinatijve of the issue; we must look also to the actual practice of relations between petitioner and Ozone. Cf. Hargis v. Wabash Railroad Co., 163 F. 2d 608, 611-612; In re Realty Hotels, 137 N. Y. S. 2d 380. As was said by the Supreme Court of Illinois, in Kehrer v. Industrial Commission, 6 N. E. 2d 635, 637-638: It is impossible * * * to lay down a rule by which the status of men working and contracting together can be accurately defined in all cases as employees or independent contractors. Each case must depend on its own facts and ordinarily no one feature of the relation is determinative hut all must be considered together. * * * The most important single factor is the right of the employer to control the manner of doing the work. * * * Petitioner has failed to establish that in actual practice he was an employee of Ozone. In support of his contention, he has offered only his own self-serving testimony that he was instructed by the Wiebels as to what customers to call on and to perform other duties. On the contrary, the record affirmatively establishes that petitioner acted as an independent contractor and not as an employee. Bose Wiebel, a disinterested witness, testified that petitioner was free to call on whatever customers he wished, to report to Ozone’s office when he felt that he ought to, and to take time off when he wished. Petitioner was paid on a commission basis, he maintained his own office in his home, and he paid all his own expenses. The fact that petitioner was sometimes given leads to business by the Wiebels is in no way inconsistent with his status as an independent contractor, since he was free to follow up these leads or not. Nor does the fact that he performed duties such as obtaining materials and machinery, and arranging for deferred payment of Ozone’s bills, sometimes at the request of the Wiebels, indicate that petitioner was an employee; petitioner’s commissions were payable only when Ozone made shipments, and the successful performance of such duties enabled Ozone to complete its shipments. The fact that petitioner used business cards representing himself as “sales manager” of Ozone with Ozone’s consent, does not show that he was an employee of Ozone, because this was done only in order to aid petitioner in his selling activities. The fact that Ozone kept control of such matters as prices and delivery schedules, and that petitioner had no authority to bind Ozone on contracts, does not make him an employee of Ozone. Cf. Conasauga River Lumber Company v. Wade, 221 F. 2d 312, certiorari denied 350 U. S. 949. The same is true of the fact that the Wiebels told petitioner that they were not interested in certain business, since Ozone was not bound to accept any business brought in by petitioner. It is clear that petitioner considered himself an independent contractor, and not an employee, during 1952. He reported his income on that basis for tax purposes, and he frequently urged that view upon the Wiebels. He also paid New York State unincorporated business tax for 1952. The fact that an administrative body of the State of New York, in 1955, determined that petitioner was not subject to New York unincorporated business tax, is not binding or persuasive on this Court. We do not know what evidence was adduced before that body, or what was the basis of its decision. It is clear also that Ozone considered petitioner an independent contractor during 1952. It did not deduct either withholding taxes or social security taxes from petitioner’s compensation. After consideration of all of the evidence, our conclusion is that petitioner was not an employee of Ozone, within the meaning of section 103 (g) (3), and that, therefore, his profits derived from his contract with Ozone are not exempt from renegotiation under the Eenegotiation Act of 1951. An order will he issued in accordance herewith. (g) Subcontract. — The term “subcontract” means— (3) any contract or arrangement (other than a contract or arrangement between two contracting parties, one of whom is found by the Board to be a bona fide executive officer, partner, or full-time employee of the other contracting party) under which— (A) any amount payable is contingent upon the procurement of a contract or contracts with a Department or of a subcontract or subcontracts ; or (B) any amount payable is determined with reference to the amount of a contract or contracts with a Department or of a subcontract or subcontracts; or (C) any part of the services performed or to be performed consists of the soliciting, attempting to procure, or procuring a contract or contracts with a Department or a subcontract or subcontracts.